UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DUSTY L. DYE and REBECCA H. DYE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 26-CV-0001-CVE-MTS |
| | ) | |
| ALLSTATE VEHICLE AND PROPERTY | ) | |
| INSURANCE COMPANY and JIMMY | ) | |
| WILLIS INSURANCE SERVICES, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Now before the Court are Defendant Jimmy Willis Insurance Services' Motion to Dismiss for Fraudulent Joinder (Dkt. # 14) and Plaintiffs' Motion to Remand and Brief in Support (Dkt. # 19). Defendant Allstate Vehicle and Property Insurance Company (Allstate) removed this case to federal court on the basis of diversity jurisdiction, even though plaintiffs and defendant Jimmy Willis Insurance Services, LLC (Willis) are citizens of Oklahoma. Dkt. # 2. Allstate argues that plaintiffs fraudulently joined Willis as a party to defeat diversity jurisdiction, because plaintiffs have not alleged any viable basis for recovery against Willis. Dkt. # 1, at 17-26. Plaintiffs ask the Court to remand this case to state court for lack of subject matter jurisdiction, because plaintiffs have asserted viable claims that Willis failed to procure the insurance policy they requested and Willis failed to ensure that plaintiffs actually qualified for the insurance policy issued by Allstate. Dkt. # 19, at 12-14; Dkt. # 29, at 8-10.

**I.**

On June 10, 2025, plaintiffs Dusty L. Dye and Rebecca H. Dye filed this case alleging claims of breach of contract and breach of the covenant of good faith and fair dealing (bad faith) against

Allstate following the partial denial of their insurance claim for wind and hail damage to their home. Dkt. # 2-2. Plaintiffs state that they are citizens of Oklahoma, and Allstate is incorporated in Illinois with its principal place of business in Illinois. Dkt. # 2, at 1; Dkt. # 2-2, at 1. Plaintiffs also asserted claims of negligent procurement of insurance and constructive fraud against Willis, and Willis is a citizen of Oklahoma. Dkt. # 2-2, at 16-21.

Plaintiffs allege that they contacted Willis to procure a homeowner's insurance policy for their new home, and they state that they "requested Willis procure a full replacement cost policy that would in actuality provide coverage that would fully replace their home in the event of a loss without exclusions, deductions or loopholes for any weather-related losses." Dkt. # 2-2, at 2. Plaintiffs claim that Willis represented that the policy issued by Allstate "would pay to replace anything and everything no matter what in the event of a catastrophe." Id. at 2-3. Plaintiffs contend that Willis failed to advise them that the condition of their home could be a factor in the reduction or total exclusion of coverage under the policy. Id. at 5-6. Plaintiffs claim that Willis made an affirmative representation that their new home was in good condition and satisfied all of Allstate's underwriting guidelines. Id. at 6. Plaintiffs' petition fails to include any allegations concerning when they initially contacted Willis for an insurance quote, but evidence provided by Allstate establishes that plaintiffs applied for homeowner's coverage in August 2019. Dkt. # 27-1, at 1; Dkt. # 27-2, at 5.

On June 17, 2023, a tornado struck plaintiffs' home and caused significant damage to the roof, chimney, and exterior of the home. Id. at 8. Plaintiffs also claim the storm damaged wooden paneling and sheet rock inside the home, and additional damage to the attic and other interior spaces was caused following the storm when a tarp on the roof proved ineffective to keep water out of the home. Id. Plaintiffs contacted Allstate the next day to file a claim under their homeowner's

insurance policy.  Id.  Plaintiffs claim that Allstate sent a consultant who conducted a brief and inadequate investigation, and an Allstate adjustor concluded that more information was needed to evaluate plaintiffs' claim.  Id. at 8-9.  Allstate sent an engineer to examine plaintiffs' home on July 12, 2023, but the engineer did not issue a report concerning his findings until January 2024.  Id. at 9.  Plaintiffs consulted a chimney company to inspect their damaged chimney, and they were told that total replacement of the chimney was the only viable option.  Id. at 10.  Plaintiffs claim that Allstate refused to pay for total replacement of the chimney on the grounds of pre-existing damage, wear and tear, and improper installation, and Allstate agreed to make only partial payments for damage to the roof, gutters, cosmetic repairs to the chimney, windows, and fence.  Id. at 9-10.

On June 10, 2025, plaintiffs filed this case alleging breach of contract and bad faith claims against Allstate, and they assert that the policy language mandates replacement coverage for all property suffering wind and hail damage.  Id. at 12.  Plaintiffs specifically allege that the language of the policy "does not make any distinction as to 'cosmetic' damage" but, instead, the policy requires "benefits for replacement with like, kind quality."  Id.  Plaintiffs contend that Allstate engages in a pattern or practice of undervaluing claims based on "outcome-oriented" investigations, although many of these allegations seem generic and not based on the specific conduct allegedly engaged in by Allstate when evaluating plaintiffs' insurance claim.  Id. at 13-16.  Plaintiffs assert claims of negligent procurement of insurance and constructive fraud against Willis based on their allegations that they requested an insurance policy that would provide full replacement of any damaged property for any accidental loss or damage, and they allege that Willis failed to procure a policy that would fully cover their property for all accidental losses without exclusions.  Id. at 17-21.

Allstate removed the case to this court on the basis of diversity jurisdiction, even though plaintiffs and Willis are citizens of Oklahoma and it would appear that complete diversity of citizenship is lacking. Dkt. # 2. Allstate contends that plaintiffs fraudulently joined Willis as a party for the sole purpose of defeating diversity jurisdiction, because plaintiffs have not alleged a potentially viable claim against Willis. According to Allstate, plaintiffs allege that they requested a replacement cost policy and admit in their petition that they actually were issued a replacement cost policy. Dkt. # 2, at 5. Allstate argues that Willis had no duty to explain the terms of coverage, and they cannot seek to hold Willis liable for negligent procurement if they failed to read the insurance policy before accepting it. Id. at 8. Plaintiffs assert that Willis should have inspected their property before submitting an application for insurance coverage, but Allstate argues that Oklahoma law imposes no duty on insurance agents to conduct underwriting on behalf of an insurance company before submitting an application for insurance coverage. Id. at 9.

## II.

Plaintiffs ask the Court to remand this case to state court, because they have alleged potentially viable claims against Willis and the parties are not completely diverse. Plaintiffs accuse Allstate of ignoring the allegations of their petition, and they argue that they have alleged that they clearly asked Willis to procure an insurance policy that would cover their home for replacement cost of any damage without any exclusions to coverage. Dkt. # 19, at 12. Plaintiffs also argue that Willis intentionally inflated the value of their home to increase insurance premiums, even though it should have known the home was older and would become "less insurable" due to age and deterioration. Id. at 14. Allstate responds that it relied on the allegations of plaintiffs' petition and removed the case to this Court due to the lack of potentially viable claims against Willis under Oklahoma law.

Dkt. # 27, at 12.  Allstate also argues that plaintiffs' insurance claim was not denied due to the type of insurance policy procured by Willis for plaintiffs' home, and Willis had no legal obligation to conduct an initial underwriting for issuance of the policy.  Id. at 16-18.

Federal courts are courts of limited jurisdiction, and there is a presumption against the exercise of federal jurisdiction.  Merida Delgado v. Gonzales, 428 F.3d 916, 919 (10th Cir. 2005); Penteco Corp. Ltd. Partnership--1985A v. Union Gas System, Inc., 929 F.2d 1519, 1521 (10th Cir. 1991).  "It is well-established that statutes conferring jurisdiction upon the federal courts, and particularly removal statutes, are to be narrowly construed in light of our constitutional role as limited tribunals."  Pritchett v. Office Depot, Inc., 420 F.3d 1090, 1095 (10th Cir. 2005).  The party invoking federal jurisdiction has the burden to allege jurisdictional facts demonstrating the presence of federal subject matter jurisdiction.  McNutt v. General Motors Acceptance Corp. of Indiana, Inc., 298 U.S. 178, 182 (1936) ("It is incumbent upon the plaintiff properly to allege the jurisdictional facts, according to the nature of the case"); Montoya v. Chao, 296 F.3d 952, 955 (10th Cir. 2002) ("The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction").  "The Court resolves doubtful cases in favor of remand."  McDonald v. CSAA Ins. Exch., 2017 WL 887108, *2 (W.D. Okla. Mar. 6, 2017) (citing Fajen v. Found. Reserve Ins. Co., 683 F.2d 331, 333 (10th Cir. 1982)).

A defendant may remove a case to federal court if the case is one over "which the district courts of the United States have original jurisdiction."  28 U.S.C. § 1441(a).  Under 28 U.S.C. § 1332, federal courts have "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states."  The Supreme Court has construed § 1332 to require complete diversity, and the

5

"plaintiff must meet the requirements of the diversity statute for *each* defendant . . . ." Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 829 (1989) (emphasis in original). The Supreme Court has recognized that a defendant's "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy." Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921). A defendant can prove fraudulent joinder by showing that either: (1) plaintiff's jurisdictional factual allegations are fraudulent and made in bad faith; or (2) plaintiff has no possibility of recovery against the non-diverse defendant. DeSmet v. CSAA Ins. Exch., 2019 WL 7284769, *2 (N.D. Okla. Dec. 27, 2019) (citing Slover v. Equitable Variable Life Ins. Co., 443 F. Supp. 2d 1272, 1279 (N.D. Okla. 2006)). If a defendant can show that all non-diverse defendants were fraudulently joined, the remaining parties will be completely diverse and the federal court has subject matter jurisdiction. See American Nat. Bank & Trust Co. of Sapulpa, v. Bic Corp., 931 F.2d 1411, 1412 (10th Cir. 1991) ("If, as defendant suggests, plaintiffs joined the Oklahoma residents without good faith, defendant may remove on the grounds of fraudulent joinder.").

"The burden of persuasion placed upon those who cry 'fraudulent joinder' is indeed a heavy one." Hart v. Bayer Corp., 199 F.3d 239, 246 (5th Cir. 2000) (quoting B., Inc. v. Miller Brewing Co., 663 F.2d 545, 549 (5th Cir. 1981)). When a defendant raises specific allegations of fraudulent joinder, the Court may pierce the pleadings to evaluate the defendant's argument. Smoot v. Chicago, Rock Island & Pac. R.R. Co., 378 F.2d 879, 881-82 (10th Cir. 1967); Dodd v. Fawcett Publications, Inc., 329 F.2d 82, 85 (10th Cir. 1964). "After resolving disputed questions of fact and ambiguities in favor of the plaintiffs, the court then determines whether they have 'any possibility of recovery against the party whose joinder is questioned.'" Asbury v. N. Star Mut. Ins. Co., 2015 WL 588607,

*1 (W.D. Okla. Feb. 11, 2015) (quoting <u>Montano v. Allstate Indem.</u>, 211 F.3d 1278, 2000 WL 525592, *1 (10th Cir. Apr. 14, 2000)). "[T]he court must decide whether there is a reasonable basis to believe the plaintiff might succeed in at least one claim against the non-diverse defendant." <u>Nerad v. AstraZeneca Pharms., Inc.</u>, 203 F. App'x 911, 913 (10th Cir. 2006).[1] "A 'reasonable basis' means just that: the claim need not be a sure-thing, but it must have a basis in the alleged facts and the applicable law." <u>Id.</u>  Although the Court can pierce the pleadings, "[t]his does not mean that the federal court will pre-try, as a matter of course, doubtful issues of fact to determine removability; the issue must be capable of summary determination and be proven with complete certainty." <u>Smoot</u>, 378 F.2d at 882.

**<u>Negligent Procurement</u>**

Plaintiffs allege that Willis failed to truthfully represent the scope of coverage offered by Allstate and it failed to procure a replacement cost insurance policy that would restore their property to its pre-loss condition.  Dkt. # 2-2, at 18.  In their motion to remand, plaintiffs focus on two particular aspects of Willis' alleged negligent procurement of insurance when preparing plaintiffs' application for insurance coverage with Allstate.  First, plaintiffs claim that Willis attempted to procure insurance coverage for which plaintiffs did not qualify, and Willis should have known that plaintiffs' home was not eligible for a total replacement policy.  Dkt. # 19, at 12-13.  Second, plaintiffs argue that Willis inflated the replacement cost of plaintiffs' home in the insurance application in order to increase plaintiffs' premiums.  <u>Id.</u> at 14.

---

[1]  Unpublished decisions are not precedential, but they may be cited for their persuasive value. <u>See</u> FED. R. APP. 32.1; 10TH CIR. R. 32.1.

Under Oklahoma law "[a]n agent has the duty to act in good faith and use reasonable care, skill and diligence in the procurement of insurance and an agent is liable to the insured if, by the agent's fault, insurance is not procured as promised and the insured suffers a loss." Swickey v. Silvey Companies, 979 P.2d 266, 269 (Okla. Civ. App. 1999). "This duty rests, in part, on 'specialized knowledge [about] the terms and conditions of insurance policies generally.'" Rotan v. Farmers Ins. Group of Cos., 83 P.3d 894, 895 (Okla. Civ. App. 2003) (citing Swickey, 979 P.2d at 269). In discharging their duty to act in good faith and exercise reasonable care, skill, and diligence in insurance procurement,"insurance agents *need only offer coverage mandated by law and coverage for needs that are disclosed by the insureds*, and this duty is not expanded by general requests for 'full coverage' or 'adequate protection.'" Id. (emphasis in original). If an agent is not provided with pertinent information, "the scope of the agent's duty to use reasonable care, skill, or diligence in the procurement of insurance does not extend" to create liability for unknown information. Rotan, 83 P.3d at 895. Oklahoma courts are in agreement that an insurance agent does "not have a duty to advise an insured with respect to his insurance needs." Id.; Mueggenborg v. Ellis, 55 P.3d 452, 453 (Okla. Civ. App. 2002). "What is required is that the agent 'offer coverage . . . for needs that are disclosed by the insured.'" Asbury v. North Star Mut. Ins. Co., 2015 WL 588607, *2 (W.D. Okla. Feb. 11, 2015) (quoting Rotan, 83 P.3d at 895).

Allstate argues that Willis prepared an application for replacement cost coverage and plaintiffs actually received a replacement cost policy in 2019.[2] Dkt. # 27, at 12. Allstate has

---

[2]    Both sides have provided affidavits contesting what plaintiffs told Willis's agent when Willis prepared an application for insurance coverage. Allstate has provided the affidavit of Samuel Castro, a licensed sales producer at Willis, and Willis denies plaintiffs' allegation that he told them he could procure an insurance policy that would "replace anything and everything no matter what in the event of a catastrophe." Dkt. # 27-1, at 1. Plaintiff Rebecca Dye has

provided a copy of the application for insurance coverage prepared by Willis on plaintiffs' behalf, and the application identified the current market value as the same as the purchase price of $167,000. Dkt. # 27-2, at 4. The estimated replacement cost for the home was listed as $231,148, with an additional $138,689 in coverage for personal property.[3] Id. at 2. The application for coverage expressly included a request for "Roof Surfaces Extended Coverage Endorsement," which provided full replacement coverage for the roof of plaintiffs' home. Id. In May 2023, Allstate notified plaintiffs that the roof of their home no longer qualified for full replacement coverage, because the roof was more than 10 years old. Dkt. # 27-5, at 4. The notice expressly advised plaintiffs that the roof surfaces extended coverage had not been purchased and they should contact their agent if they intended to purchase more extensive insurance coverage for their roof. Allstate also notified that it had amended the policy to use the "actual cash value of the loss" for the repair or replacement of damaged property. Id. at 9. The notice of changes to the homeowner's insurance policy came directly from Allstate and was not based on new or additional information provided to Allstate by

---

submitted an affidavit acknowledging that she spoke to Castro, and she claims that Castro falsely represented that the policy provided full replacement coverage for the roof of plaintiffs' home. Dkt. # 29-4, at 1-4. The Court finds it unnecessary to consider the allegations in the affidavits or attempt to resolve any factual disputes, because the documentary evidence provides a clearer representation of the actual coverage procured and the notice provided to plaintiffs about that coverage.

[3]     Plaintiffs allege that Willis inflated the value of their home to increase the replacement cost, and this directly increased their insurance premiums due the unreasonably high value of the home. Dkt. # 2-2, at 6. However, plaintiffs have made no specific allegations as to what a reasonable value and/or replacement cost for the home would have been, and plaintiffs have made no allegations explaining how using the purchase price of the home as a starting point for calculating the replacement cost for the home was unreasonable. Plaintiffs have not made any attempt to explain this theory of negligent procurement in their briefing, and the Court does not find that plaintiffs have met their burden to adequately alleged a negligent procurement claim against Willis based on an allegedly inflated home value.

Willis.  Dkt. # 27, at 9.  In November 2021, Willis had already advised plaintiffs that this change to their homeowner's policy would go into effect at the next renewal, and there is no evidence that plaintiffs asked Willis to attempt to procure extended roof coverage or that plaintiffs offered to pay an additional premium for such coverage.  Dkt. # 27-1, at 3; Dkt. # 33-4.

The evidence shows that Willis initially helped plaintiffs procure homeowner's insurance from Allstate in 2019 and the policy Willis requested on plaintiffs' behalf included replacement coverage for plaintiffs' home, including for the roof.  There is also no dispute that Allstate amended the policy to remove total replacement coverage for the roof, and Allstate provided notice to plaintiffs of this change to their insurance coverage before the storm in June 2023.  There is no evidence in the record suggesting that plaintiffs contacted Willis to request additional coverage after learning that Allstate had removed total roof replacement coverage from their homeowner's insurance policy.  Plaintiffs could also have decided the coverage offered by Allstate did not meet their needs and sought coverage from another insurer, but they chose to renew their policy with Allstate after receiving notice from Willis of changes to their homeowner's insurance policy.  Under Oklahoma law, an insurance agent has a duty to "act in good faith and use reasonable care, skill and diligence in the procurement of insurance," and the agent may be liable to the insured if the "insurance is not procured and the insured suffers a loss."  Swickey, 979 P.2d at 269.  Plaintiffs have cited no authority suggesting that an insurance agent has a continuing duty after the initial procurement of insurance to monitor the insured's policy and ensure that the policy continues to meet the insurance needs disclosed by the insured.  See Kutz v. State Farm Fire & Cas. Co., 189 P.3d 740 (Okla. Civ. App) (insurance agent had no legal obligation to notify the insured that the insurer had cancelled the policy due to non-payment of premiums).

Plaintiffs argue that they sought a homeowner's insurance policy that would cover all losses "in the event of a loss without exclusions, deductions or loopholes for any weather-related losses," and they seek to hold Willis liable for negligent procurement for failing to procure such a policy. Dkt. # 19, at 12. The Court will consider whether Oklahoma law would likely recognize a claim against an insurance agent based on the agent's alleged failure to procure total replacement coverage policy with no out of pocket costs to the insured and no exclusions limiting the scope of coverage. Plaintiffs claim that Willis represented that it could obtain "full replacement cost coverage," which was allegedly the "best policy Allstate offered." Dkt. # 2-2, at 6. Plaintiffs also claim that they believed they would receive full replacement coverage for any type of loss, even for cosmetic damage to their home, for all weather related losses without any out of pocket costs to themselves. Id. at 12. The Court has found no Oklahoma legal authority suggesting that an insurance agent is required to construe a request for "replacement coverage" to mean a policy with no exclusions and no possible expenses borne by the insured in the event of a covered loss. The Court will assume for this Opinion and Order that plaintiffs' specifically requested a full replacement policy with no exclusions and no out of pocket costs to them in the event of loss, but this still would not establish a viable negligent procurement claim against Willis. Plaintiffs have cited no authority suggesting that an insurance agent has a continuing duty to monitor an insured's coverage to ensure that it continues to meet the insured's initial expectations after initially procuring coverage for the insured. Plaintiffs' loss occurred nearly four years after they initially sought homeowner's insurance from Allstate and, even if they initially obtained a policy meeting all of their expectations, they received notice from Allstate and Willis that they no longer had total replacement roof coverage prior to the 2022 renewal. Plaintiffs would have a potentially viable claim if they had contacted Willis after

receiving notice of changes to their policy and requested additional coverage, which Willis failed to request or obtain, on their behalf. Instead, plaintiffs took no action to ensure that they maintained full roof replacement coverage, and they have no Oklahoma authority suggesting that Oklahoma courts would recognize a negligent procurement claim against an insurance agent under these circumstances.

The Court will consider plaintiffs' argument that Willis negligently or recklessly represented that their home qualified for replacement coverage, because Allstate later denied or reduced payment on the insurance claim due to "wear and tear" or deterioration. Plaintiffs argue that Willis acted negligently by applying for coverage on plaintiffs' behalf for which plaintiffs' home did not qualify, and Willis misrepresented to plaintiffs that they were eligible for full replacement coverage with Allstate. Dkt. # 19, at 12-13. Plaintiffs state in their petition that they sought replacement coverage for their home, and Willis represented that it could obtain coverage that "would fully restore the Insured Property to its pre-loss condition in the event of damage . . . ." Dkt. # 2-2, at 6. Plaintiffs' allegations concerning Allstate's investigation and subsequent payments under the policy merely establish the existence of a coverage dispute, and these allegations cannot reasonably be construed to support a claim against Willis for negligent procurement of insurance. Plaintiffs contend that Allstate conducted an inadequate and biased investigation of their claim of storm damage and sent a "hand-picked" engineer who found pre-existing damage, wear and tear, and improper installation of plaintiffs' chimney. Plaintiffs claim that Willis should have discovered these alleged defects before applying for coverage with Allstate, but plaintiffs have not alleged any facts suggesting that the defects would have been found during an inspection of their home almost four years before they filed an insurance claim. The record also does not support plaintiffs' argument that Allstate deemed

their home uninsurable, and plaintiffs have merely alleged that there is a dispute concerning the amount owed to them under the plain terms of the insurance policy. This does not constitute the negligent procurement of insurance and they have not alleged a viable negligent procurement claim against Willis.

**Constructive Fraud**

Plaintiffs have also alleged a constructive fraud claim against Willis, and this type of claim is distinct from an ordinary common-law fraud claim. Under Oklahoma law, a plaintiff must prove by clear and convincing evidence four elements to prevail on a claim of fraud: "(1) a false misrepresentation of a material fact, (2) made as a positive assertion either known to be false or recklessly made without knowledge of the truth, (3) made with the intention of causing the other party to act, and (4) which is relied on by the other party to his or her own detriment." Gish v. ECI Servs. of Oklahoma, Inc., 162 P.3d 223, 228 (Okla. Civ. App. 2006). Constructive fraud, as opposed to actual fraud, is "a breach of legal or equitable duty to the detriment of another, which does not necessarily involve any moral guilt, intent to deceive, or actual dishonesty of purpose." Croslin v. Enerlex, Inc., 308 P.3d 1041, 1046 (Okla. 2013). A claim of constructive fraud may be based on a negligent or innocent misrepresentation when there is an underlying duty to correctly inform another person of certain facts. Id.

Plaintiffs have cited no Oklahoma cases suggesting that an insurance agent has an affirmative duty to independently investigate whether a property meets underwriting guidelines, and they also do not allege that Willis made affirmative representations that the property actually met Allstate's underwriting guidelines. Plaintiffs contend that Willis falsely represented that it had procured replacement coverage, even though the policy in effect at the time of the loss did not provide full

13

replacement coverage, and that Willis intentionally or negligently represented that plaintiffs' home actually qualified for a replacement coverage policy.  Dkt. # 19, at 24-26.  The Court has already established that a substantial period of time elapsed from plaintiffs' initial application for homeowner's insurance and the loss suffered in June 2023, and plaintiffs received actual notice of changes to their policy from Allstate and Willis about these changes prior to the loss.  The 2022 policy renewal, as updated on May 4, 2023, contains a declarations page clearly stating that changes had been made to plaintiffs' homeowner's insurance policy, and the amended declarations plainly state that "**Because your Composition Roof is 11 years old, the percent of roof surface replacement cost currently covered for windstorm or hail damage is: 67%.**"  Dkt. # 27-5, at 1, 4 (emphasis in original).  Willis also prospectively notified plaintiffs that this change to the policy would take place when the policy renewed in 2022.  Dkt. # 27-1, at 3; Dkt. # 33-4.

Plaintiffs cannot show that there is even a possibility that Willis could be held liable for constructive fraud as a matter of Oklahoma law.  Constructive fraud requires that the defendant negligently made a misrepresentation that misled the plaintiff to his or her detriment.  The record clearly shows that Willis initially obtained a policy with full roof replacement, and Willis and Allstate notified plaintiffs in 2022 that their home no longer qualified for full replacement coverage. Even if the Court assumes that plaintiffs were initially misled by something Willis stated or omitted, plaintiffs later received actual knowledge of the coverage afforded by their policy and took no action to increase their coverage or seek out a new insurer.  At the time of the loss, plaintiffs knew the scope of coverage provided by the policy and they cannot tie any misrepresentation by Willis to the lack of full roof replacement coverage. Plaintiffs argue that Willis falsely advised them that their home satisfied all of Allstate's underwriting requirements, and this proved to be untrue when Allstate

later denied coverage based on pre-existing damage.  Dkt. # 19, at 24.    Allstate's subsequent limitation on coverage following a loss several years after the policy was initially issued does not suggest that plaintiff's home failed to meet Allstate's underwriting guidelines when the policy was issued, nor does this suggest that Willis made a false representation about the availability of coverage when the policy was issued.  Plaintiffs have not shown as a matter of Oklahoma law that insurance agents are responsible for ensuring that insured property complies with an insurer's underwriting guidelines years after an initial application for insurance, nor do plaintiffs' make any allegations that Willis affirmatively acknowledged at subsequent renewals that their home continued to satisfy Allstate's underwriting guidelines.  The Court finds that plaintiffs have fraudulently joined Willis as a party, and the Court will dismiss Willis as a party and retain subject matter jurisdiction over this case.

**IT IS THEREFORE ORDERED** that  Plaintiffs' Motion to Remand and Brief in Support (Dkt. # 19) is **denied**, and Defendant Jimmy Willis Insurance Services' Motion to Dismiss for Fraudulent Joinder (Dkt. # 14) is **granted**.  Jimmy Willis Insurance Services, LLC is hereby **terminated as a party**.  The parties are directed to correct case caption accordingly on future pleadings.

**IT IS FURTHER ORDERED** that the parties shall file a joint status report no later than **July 8, 2026**.

**DATED** this 24th day of June, 2026.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE